.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCO ANTONIO RAMOS FUNES, aka
MARCO ANTONIO RAMOS FUNEZ, aka
MARCO ANTONIO RAMOS, aka MARCO
RAMOS, aka MARCOS RAMOS,[1]

                                    Petitioner,

-vs-                                                       DECISION and ORDER

                                                       19-CV-6332 CJS

JEFFREY SEARLS, Field Office Director
Buffalo Federal Detention Facility ("BFDF"),

                                    Respondent.
_____

INTRODUCTION

Proceeding *pro se*, Marco Antonio Ramos Funes ("Petitioner") (A 019-450-581) commenced this habeas proceeding on May 6, 2019, pursuant to 28 U.S.C. § 2241 ("Section 2241") against Respondent ("Respondent" or "the Government") challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") pending the completion of removal proceedings against him.   For the reasons discussed below, the

_____

[1]  The Clerk of the Court is directed to amend the caption, as Petitioner has used, and/or been referred to by, these names interchangeably throughout the record. *See, e.g.,* ECF No. 4-1 at pp. 30, 32, 35; *see also,* ECF No. 7.

request for a writ of habeas corpus is denied.

BACKGROUND

Unless otherwise noted, the facts as set forth below are taken from the petition and administrative record in this action; the docket in a related case, *Ramos Funez v. Sessions*, 18-CV-6413 MAT;[2] and the docket from Petitioner's pending appeal before the United States Court of Appeals for the Second Circuit, case number 19-2318.

Petitioner is a native and citizen of Honduras.   On December 12, 1970, when Petitioner was approximately forty days old, his parents brought him to the United States.   Petitioner subsequently resided in the United States as a Lawful Permanent Resident ("LPR").   In 1979, Petitioner's mother became a naturalized U.S. citizen, but Petitioner and his father remained LPRs.

In 2005, Petitioner was convicted, in the District Court of Nassau County, New York, of Sexual Abuse in the Second Degree in violation of NYPL § 130.60.[3]  For this conviction, Petitioner received a sentence of ten months in jail.[4]

Sometime prior to September 4, 2007, Petitioner left the United States and traveled to Honduras.   The record does not state how long Petitioner remained outside

---

[2]  *See, Ramos Funez v. Sessions*, No. 6:18-CV-06413-MAT, 2019 WL 4451484 (W.D.N.Y. Sept. 17, 2019).

[3]  ECF No. 4-1 at p. 31.   The record also indicates that in In 2002, Petitioner was convicted of Criminal Possession of a Controlled Substance in the Fifth Degree in violation of New York Penal Law ("NYPL") § 220.06. *Id.*   However, that conviction has no bearing on the removal proceedings at issue here.

[4]  ECF No. 4-1 at pp. 14, 34.

of the United States, but there is no indication that he was gone for an extended period. On September 4, 2007, Plaintiff returned to the United States via a flight from Honduras to Miami International Airport.    At the airport, U.S. Customs and Border Patrol ("CBP") referred Petitioner for secondary inspection, to verify his residence and to determine his admissibility.[5]  During the secondary inspection, CBP determined that Plaintiff had been convicted of Sexual Abuse in violation of NYPL § 130.60.    Because of that, CBP initially decided to detain Petitioner, referring to his situation as "Section 240 case with mandatory detention due to the subject's arrest and conviction."[6]  However, based upon Petitioner's statement that he "might be a U.S. citizen" due to derivative citizenship through his mother, CBP determined that further investigation was required.[7] Consequently CBP in Miami referred the matter to the Department of Homeland Security ("DHS") at John F. Kennedy International Airport ("JFK") in New York, near Plaintiff's residence, for "further determination of [Petitioner's] immigration status and

---

[5]  ECF No. 4-1 at p. 32.

[6]  ECF No. 4-1 at p. 32.    As will be discussed further below, Petitioner's conviction for sexual abuse was a crime of moral turpitude, that rendered him inadmissible, and which, even though he had LPR status, categorized him as an arriving alien. *See, e.g., Romo v. Barr*, 933 F.3d 1191, 1195 (9th Cir. 2019) ("As relevant here, pursuant to § 1101(a)(13)(C)(v), an alien who is a legal permanent resident is treated as one seeking admission if the alien "has committed an offense identified in section 1182(a)(2)." And pursuant to § 1182(a)(2)(A)(i)(I), as relevant here, an "alien convicted of ... a crime involving moral turpitude ... or an attempt or conspiracy to commit such a crime ... is inadmissible.").

[7]  ECF No. 4-1 at p. 33.

final admissibility."[8]  CBP further issued Petitioner an "Order to Appear Deferred Inspection" and directed him to report to DHS at JFK to complete the inspection and investigation.[9]   However, Petitioner never reported to DHS in New York as directed.[10]

In 2010, Petitioner was convicted in New York State Supreme Court, New York County, of Grand Larceny in the Second Degree in violation of NYPL § 155.40, for which he received a prison sentence of two-to-six years.   Also, in 2010, Petitioner was convicted in New York State Supreme Court, Kings County, of Attempted Conspiracy in the Fourth Degree in violation of NYPL § 105.10, for which he received a sentence of one year's imprisonment.[11]   The combined term of imprisonment for these two convictions was a minimum of three years, and a maximum of seven years,[12]  and Petitioner served more than five years of that term.

---

[8]  ECF No. 4-1 at p. 33.

[9]  ECF No. 4-1 at p. 32.

[10]  ECF No. 4-1 at p. 31.   In his Petition, Petitioner states: "Petitioner, upon returning from Honduras was stopped at the Miami International Airport on September 4, 2007, and sent for Secondary Inspection. Petitioner had, from that time forward, up to his arrest by Detectives, New York County, in 2010, appeared for all his scheduled Immigration interviews and appearances." Petition, ECF No. 1 at p. 3.   The Court does not find this bare allegation plausible, since there is no indication in the administrative record that any such "interviews" or "appearances" ever occurred; rather, the record indicates that Petitioner failed to ever appear at the DHS offices at JFK when directed to do so.   However, even assuming that Petitioner in fact appeared for certain interviews or appearances, he does not claim, nor is there any indication that, he was ever granted final admissibility following his return to the United States from Honduras.

[11]  ECF No. 4-1 at p. 35-36.

[12]  ECF No. 4-1 at pp. 14.

On July 29, 2010, DHS issued a warrant ("Warrant for Arrest of Alien") for petitioner's arrest as an alien within the country in violation of the immigration laws.[13] That same day, DHS issued a "Notice to Appear" to Petitioner in conjunction with "removal proceedings under section 240 of the Immigration and Nationality Act."[14]   The Notice to Appear recited that Plaintiff was an "arriving alien" who had been "paroled into the United States as a returning lawful permanent resident at or near Miami, FL on or about September 04, 2007."[15]  The Notice to Appear further indicated that because of Petitioner's conviction for sexual abuse, he was subject to removal from the United States pursuant to Section 212(a)(2)(A)(i)(I), 8 U.S.C § 1182(a)(2)(A)(i), of the Immigration and Nationality Act ("INA") as an alien convicted of crime of moral turpitude.[16]

On or about January 15, 2011, Petitioner filed an Application for Certificate of Citizenship (N-600) to U.S. Citizenship and Immigration Services ("USCIS").   The application maintained that Petitioner had derivative citizenship through his mother. However, on January 30, 2012, USCIS denied the application, finding that Petitioner did not meet the statutory requirements for derivative citizenship.[17]

---

[13]  ECF No. 4-1 at p. 1.

[14]  ECF No. 4-1 at p. 28.

[15]  ECF No. 4-1 at p. 28.

[16]  ECF No. 4-1 at p. 28.   The Notice to Appear was served on Petitioner on April 17, 2012.

[17]  During its investigation, USCIS determined that Petitioner did not qualify for benefits under INA § 320 because he was over 18 years-old on February 27, 2001, the date the law took effect. USCIS further

On January 7, 2013, an Immigration Judge ("IJ") administratively closed Petitioner's removal action because Petitioner was in state custody, serving his prison sentences.

On August 31, 2016, as Petitioner was nearing his release from state prison, DHS moved the Immigration Court to re-calendar Petitioner's removal proceedings and change venue to the Ulster Correctional Facility in Napanoch, New York, where he was incarcerated.   On September 20, 2016, both motions were granted, and Petitioner's removal proceedings were re-opened.

On January 11, 2017, DHS served Petitioner with additional charges of inadmissibility/deportability. Specifically, in addition to charging Petitioner as an alien convicted of a crime of moral turpitude (sex abuse), DHS charged him with being subject to removal pursuant to INA § 212(a)(2)(B), 8 U.S.C. § 1182(a)(2)(B), as an alien who had been convicted of two or more offenses for which the aggregate sentences to confinement actually imposed were five years or more.

On February 22, 2017, DHS took Petitioner into custody upon his release from state prison.   At that time, a DHS Supervisory Detention and Deportation Officer ("SDDO") determined that Petitioner would be detained, pursuant to INA § 236,

---

determined that Petitioner did not qualify for benefits under former INA § 321 because the statute required that both parents be naturalized before an applicant turned 18 years-old, and only Petitioner's mother became a U.S. citizen before he reached age 18.

"pending a final administrative determination."[18]

Following a hearing on October 24, 2017,[19] an IJ concluded that he lacked

jurisdiction to set bond because Petitioner was classified as an arriving alien.[20]

Petitioner appealed the decision to the Board of Immigration Appeals ("BIA").

On March 12, 2018, BIA dismissed the appeal, finding that the IJ had properly

concluded that he lacked jurisdiction to set bond for Petitioner.    On this point, BIA

stated:

> We find no error in the Immigration Judge's determination.    The
> regulation relating to detention and release of aliens removes from
> Immigration Judges the authority to redetermine the custody of "[a]rriving
> aliens in removal proceedings." 8 C.F.R. § 1003.19(h)(2)(i)(B).
> Moreover, unlike the classes of aliens referred to in paragraphs (C), (D),
> and (E) of 8 C.F.R. § 1003.19(h)(2)(i), who likewise fall outside the
> Immigration Judge's custody jurisdiction, the regulation does not confer
> upon Immigration Judges even the limited jurisdiction to entertain the
> request of an alien, who has been designated by the DHS as an arriving
> alien, for a determination by an Immigration Judge of whether or not the
> alien is "properly included within that paragraph." 8 C.F.R §
> 1003.19(h)(2)(ii).

ECF No. 4-1 at p. 11 (footnote and citations omitted).    In sum, BIA indicated that while

---

[18] Government's Answer and Return, ¶ 10; *see also*, ECF No. 4-1 at p. 13 (Referring to "section 236 of the
Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations.").

[19] As mentioned earlier, Petitioner was taken in DHS custody on February 22, 2017.    According to the
Government, "[b]etween April 11, 2017 and December 20, 2017, Petitioner's bond and removal hearings
were adjourned several times, on most occasions to allow the Petitioner time to seek counsel and to
prepare." Answer and Return, ¶ 11.

[20] ECF No. 4-1 at p 12.

the IJ had held a nominal "bond hearing" pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) ("Lora"), the IJ had properly concluded that he lacked jurisdiction to consider Petitioner's custody status.[21]

Meanwhile, essentially no progress had been made in Petitioner's removal proceedings since February 2017, when he was taken into DHS custody.   Instead, the matter had been adjourned repeatedly at Petitioner's request, to allow him time to prepare and to retain an attorney.[22]   During that time, Petitioner retained three different attorneys, all of whom eventually withdrew from representing Petitioner.[23]  One of those attorneys indicated, when moving to withdraw, that Petitioner was being "advised by other people," and that the attorney felt he had no "strategic input" into Petitioner's case.[24]

---

[21]  ECF No. 4-1 at p. 11. ("Although the Immigration Judge held a bond hearing pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), we agree with the [IJ's] ultimate conclusion that [he did not have] jurisdiction regarding custody and bond here.").

[22]  ECF No. 4-5.

[23]  *See*, ECF No. 4-2 at pp. 25-26; see also, BIA decision dated July 16, 2019 ("Though the respondent was able to obtain counsel on multiple occasions, all three attorneys filed motions to withdraw as counsel and all motions were granted (IJ at 3-4; Tr. at 123, 141-42, 242-43). The first attorney withdrew as counsel on March 7, 2017 (IJ at 3). The second attorney withdrew as counsel on August 8, 2017 (IJ at 3 ). The third attorney withdrew as counsel on March 5, 2018 (IJ at 4). The respondent concedes on appeal that he was ultimately granted eight continuances throughout the proceedings to obtain new counsel (Respondent's Br. at 16).").

[24]  ECF No. 4-2 at p. 29.

On April 13, 2018, the IJ determined that no good cause existed for any further continuances of the removal proceedings.   The IJ observed that Petitioner's claim of derivative citizenship had been denied by USCIS, and that it did not appear Petitioner had appealed that ruling, except insofar as he had challenged the constitutionality of the derivative citizenship statute.   The IJ further determined that Petitioner had withdrawn his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").   The IJ made that determination after Petitioner declined, at the hearing, to put forward any evidence concerning those claims.   Finally, the IJ ordered Petitioner removed from the United States pursuant to INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an arriving alien who had been convicted of a crime of moral turpitude; and pursuant to INA § 212(a)(2)(B), 8 U.S.C. § 1182(a)(2)(B), as an alien who has been convicted of two or more offenses for which the aggregate sentences to confinement actually imposed were five years or more.

Petitioner appealed the IJ's decision to the BIA, raising several grounds for reversal. By decision dated December 7, 2018, BIA dismissed Petitioner's claim challenging the constitutionality of the derivative citizenship statute, INA § 320 and former INA § 321, 8 U.S.C. §§ 1431, 1432.   However, the BIA remanded the matter to the IJ, for further findings[25]and the issuance of a complete written decision.   In its

---

[25]  The BIA noted while the IJ sustained the charges under INA § 212 based on Petitioner's "prior admissions," he did not render findings on what Petitioner actually admitted.   The IJ also failed to make factual findings to support his determination that Petitioner's motion to terminate the proceedings was

9

decision, the BIA referred to Petitioner as a lawful permanent resident.[26]

During the pendency of his appeal to the BIA, on June 7, 2018, Petitioner filed a petition in this Court pursuant to 28 U.S.C. § 2241, entitled *Ramos Funez v. Sessions*, 18-CV-6413 MAT.   The petition asserted two claims.   First, Petitioner asserted that DHS's detention of him was illegal/unlawful because he was a derivative citizen of the United States.   Second, Petitioner argued that the IJ had violated his rights to equal protection and due process.[27]

Meanwhile, pursuant to the order of the BIA dated December 7, 2018, mentioned above, the administrative matter was remanded to the IJ.   On February 11, 2019, the IJ issued a decision purporting to clarify the reasons that he had ordered Petitioner removed pursuant to sections 212(a)(2)(A)(i)(I) and 212(a)(2)(B) of the Immigration and

---

untimely. In addition, although the IJ purported to deny Petitioner's motion to change venue for "the reasons as set forth . . . previously in the court file," the colloquy between the parties and the IJ was insufficient to provide the necessary findings of fact and legal analysis to permit appellate review. Id. (citation omitted). In the absence of a complete written decision, the BIA declined to address the remaining appellate arguments raised by Petitioner.

[26] ECF No. 4-2 at p. 19.

[27] Petitioner asserted that, as "a derivative citizen of the United States, [he] was deprived of his right to due process when, on April 13, 2018, during a merits hearing, the Assistant Chief Counsel ("ACC") [for DHS] refused to accept his Motion to Terminate which was partially based on his citizenship and a copy of his N-600[,]" on the grounds that it was untimely. Pet. ¶ 69. Petitioner asserted that the IJ erroneously ordered him to be removed without any discussion on his citizenship or motion to terminate. By doing so, Petitioner argues, "the IJ failed to confer upon [him] his rights to due process and equal protection under the constitution." Pet. ¶ 69.

Nationality Act, 8 U.S.C. §§ 1182(a)(2)(A)(i)(I), (a)(2)(B).   In that regard, the IJ explained, *inter alia*, the basis for his finding that Petitioner had abandoned his applications for asylum, withholding of removal, and protection under the Convention Against Torture.

Petitioner appealed the IJ's clarified decision to the BIA.   On April 1, 2019, the Government filed its brief in opposition to Petitioner's appeal.   The Government asserted, *inter alia*, that the IJ had properly found that Petitioner had withdrawn his applications for asylum, withholding of removal and protection under the Convention Against Torture, by failing to prosecute them.   In that regard, the Government detailed the numerous adjournments that Petitioner had received and how, at the hearing on April 13, 2018, Petitioner had declined to go forward with his claims despite having been warned that it was his last opportunity to do so.[28]

On May 6, 2019, while Petitioner's appeal to the BIA and his habeas petition were both still pending, Petitioner filed the subject § 2241 habeas action, his second, in this Court.   In the subject petition, Petitioner maintains that his continued detention is unlawful, and that he should either be released or granted a bond hearing.   More specifically, Petitioner indicates that he has been in USDHS/ICE custody since February 2017 and has only had one review of his custody status, which was his initial bond hearing (at which the IJ found that he lacked jurisdiction to re-consider Petitioner's

---

[28] *See*, Govt. Appeal Brief to BIA, ECF No. 4-2 at pp. 38-40; *see also*, ECF No. 4-3 (Detailing the various

detention).   Further, Petitioner contends that his continued detention is unreasonable, since he is not subject to a final order of removal, and since there is no reasonable likelihood that he will be removed in the foreseeable future.   The common idea behind Petitioner's arguments is that INA § 236(c) (8 U.S.C. § 1226(c)) and/or INA § 235(b) (8 U.S.C. § 1225(b)) "contain an implicit 'reasonableness' requirement and should be read to authorize mandatory detention for only up to six months."[29]

In this regard, the petition purports to assert three claims.   First, the petition maintains that this Court should grant a stay of removal, since Petitioner has been in custody longer than six months and his removal is not likely to occur in the reasonably foreseeable future.   Second, the petition contends that Petitioner's continued, indefinite detention violates his substantive due process rights under the Fifth Amendment. Third, the petition asserts that Petitioner's detention for longer than six months without a meaningful review of his custody status violates his procedural due process rights under the Fifth Amendment.   The petition requests two forms of relief: 1) an order granting a stay of removal; and 2) an order directing that Petitioner either be released or granted a bond hearing.

On June 26, 2019, the Government, Respondent, filed its response to the Petition.   Respondent concedes that this Court has jurisdiction to entertain the petition, but only insofar as it challenges the constitutionality of Petitioner's detention: "[T]he

---

[29] *See,* Petition, ECF No. 1 at p. 6.

Court's inquiry in this habeas proceeding is to review the length of detention of Petitioner, and to determine whether such detention is constitutionally permissible."[30] Respondent maintains, though, that "[t]he Petition should be denied because Petitioner is lawfully detained under Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225(b), as an arriving alien, without a final order of removal."   Respondent further indicates that based on Petitioner's status, as an arriving alien detained under 8 U.S.C. § 1225(b)(2)(A), there is no merit to his claims that his constitutional rights have been violated since he has received all the process that he is due.   On this point, Respondent states that as an "arriving alien," Petitioner's detention is not only lawful, it is "mandated—under the applicable statute, 8 U.S.C. § 1225(b)(2)(A), and his only opportunity for release from such detention is by parole under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A)."[31]

As for why Petitioner, who had resided in the United States as an LPR since his infancy, is considered an "arriving alien," Respondent points to the fact that in 2007, after being convicted of certain crimes, Petitioner left the United States, went to Honduras, and then returned to the United States without being admitted:

> Petitioner was initially paroled into the United States on September 4, 2007, as a returning lawful permanent resident who was ordered to appear for deferred inspection due to his criminal convictions in the United States.   He was not, however, lawfully admitted. Petitioner was charged

---

[30] ECF No. 5 at p. 11.

[31] ECF No. 5 at p. 12.

13

with being an inadmissible arriving alien who has been convicted of a crime of moral turpitude.    Petitioner is an applicant seeking admission because, although he is "present" in the United States, he has not been admitted. *See*, 8 U.S.C. § 1225(a)(1).

ECF No. 5 at p. 13 (citation to record omitted).

Respondent further contends that because of Petitioner's status as an "arriving alien," he is not entitled to any due process, except that which has been provided for by Congress:

As an arriving alien, Petitioner's rights are more limited than those of both a citizen of the United States, as well as an alien who has already made his way past the country's borders (albeit illegally).    It is well established that arriving aliens do not enjoy the same constitutional rights as admitted aliens.    Arriving aliens remain legally outside the United States until inspected and admitted. *See* 8 U.S.C. § 1101(a)(13)(A). Although Petitioner is being physically detained within the borders of the United States, as an arriving alien he is legally considered to be outside of the United States. Certain constitutional protections available to persons inside the United States are simply unavailable to aliens deemed to be outside the country's geographic borders.

Further, immigration law draws a bright line between "an alien who has effected an entry into the United States and one who has never entered." *Zadvydas[ v. Davis]*, 533 U.S. [678,] 693 [(2001) ("*Zadvydas*")]. Thus, an arriving alien standing on the threshold of entry has no procedural due process rights regarding admission or exclusion and stands on a different footing: whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned. *See [Shaughnessy v. United States ex rel] Mezei*, 345 U.S. 206 (1953) [("*Mezei*")] (finding that physical presence in the United States alone does not extend to an inadmissible alien the constitutional protections which are due those persons legally admitted or who have gained entry to the United States).

14

> The Due Process Clause affords an excludable/inadmissible[32]alien, such as Petitioner, no procedural protection beyond the procedures explicitly authorized by Congress, nor any right to be free from immigration detention. *Id.*
>
> As an arriving alien, the due process clause does not apply equally to Petitioner, or to other foreign citizens who, like him, are seeking admission to the United States. *See id.* at 210; *see also Mejia v. Ashcroft*, 360 F. Supp. 2d. 647, 651-52 (2005). Petitioner has been provided all the due process to which he is entitled as an arriving alien detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Thus, his due process claims are without merit and there is no viability to Petitioner's due process challenge to his mandatory detention as an arriving alien. Rather, DHS is lawfully and properly detaining Petitioner pursuant to 8 U.S.C. §1225(b)(1)((B)(iii)(IV), and he has received all the due process to which he is entitled. Accordingly, the instant Petition should be denied and dismissed.

Respondent's Memo of Law, ECF No. 5 at pp. 13-14 (some citations omitted).

Respondent maintains that the principle set forth in *Mezei* –that arriving aliens have no right to due process except that which is provided by Congress-- has been reaffirmed by the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018),[33] and by the Second Circuit in *Guzman v. Tippy*, 130 F.3d 64 (2d Cir. 1997) ("*Guzman*").

---

[32] While prior caselaw referred to the noncitizen as an "excludable" alien and the current lexicon refers to "inadmissible" aliens, the terms are legal equivalents and reflect no more than an amendment to the terms used in the INA. *See Herrera-Mesa v. McElroy*, 2000 U.S. Dist. LEXIS 756, at *16 n.5 (S.D.N.Y. Jan. 28, 2000) ("The term 'inadmissible' has replaced 'excludable' in the INA statutory framework.").

[33] Since *Jennings* did not expressly "reaffirm" this point, the Court assumes that Respondent is referring to the statement in *Jennings* that "some members of the certified class may not be entitled to bond hearings as a constitutional matter." *Jennings v. Rodriguez*, 138 S. Ct. at 852 (citing *Mezei*).

Indeed, Respondent asserts that *Guzman* "makes clear that the INA authorizes

indefinite detention of excludable/ inadmissible aliens." ECF No. 5 at p. 17. Respondent

observes that several district court decisions from this Circuit have recently indicated

that *Mezei* and *Guzman* are no longer good law, but that those decisions were "wrongly

decided."

Respondent further contends that even if Petitioner was entitled to due process

protections afforded to admitted aliens, he still has not suffered a due process violation

since his continued confinement is due to his pursuit of legal remedies.   On this point,

Respondent states that it is a longstanding rule in the Second Circuit that "continued

detention while challenges to removal are pending is generally not unreasonable," citing

*Abimbola v. Ridge*, 181 Fed. App'x 97, 99 (2d Cir. 2006), *Doherty v. Thornburgh*, 943

F.2d 204 (2d Cir. 1991) and *Dor v. District Director, INS*, 891 F.2d 997 (2d Cir. 1989).

Respondent contends that these cases establish that "a noncitizen cannot raise due

process claims over lengthy detention in removal proceedings that arises due to the

noncitizen's own pursuit of legal remedies."[34]  Respondent argues that this principle

applies to both substantive due process claims and procedural due process claims.

Further, Respondent maintains that in the instant case, "Petitioner cannot contest that

the only reason he remains in detention is because of his continued legal challenges,

---

[34]  ECF No. 5 at p. 20; *see also, id.* at p. 22 ("[O]ngoing detention of a noncitizen resulting from continuing litigation does not give rise to a due process claim.").

including the roughly 20 continuances he obtained while cycling through attorneys."[35]

As an additional factor weighing against a finding of a due process violation, Respondent points out that Petitioner has not shown that his objections to removal have any merit.   Further, Respondent contends that Petitioner's conditions of confinement are unlike those in a penal institution, which circumstance weighs against a due process violation.[36]   Finally, Respondent asserts that this Court lacks jurisdiction to consider Petitioner's request for a stay of his removal or of his transfer to a different facility.

On July 16, 2019, the BIA affirmed the IJ's removal order and dismissed Petitioner's appeal.   In that regard, the BIA indicated, in pertinent part, that Petitioner was properly found to be inadmissible and ordered removed, pursuant to INA § 212(a)(2)(A)(i)(I), since he had been convicted of Sexual Abuse in the Second Degree in violation of New York Penal Law § 130.60(2), which is categorically a crime involving moral turpitude. The BIA found, therefore, that it did not need to consider whether Petitioner was also inadmissible on the additional grounds found by the IJ, involving other criminal convictions. *See*, BIA Decision at p. 2 ("In conclusion, a violation of NYPL § 130.60(2) categorically involves moral turpitude and the respondent is inadmissible as charged. Inasmuch as the respondent is inadmissible under section 212(a)(2)(A)(i)(I) of the Act, we need not determine whether he is additionally inadmissible under section

---

[35] ECF No. 5 at p. 23.

[36] ECF No. 4-4.

212(a)(2)(B) of the Act.").    The BIA further rejected all of Petitioner's other arguments and dismissed his appeal.

Petitioner subsequently filed an appeal with the United States Court of Appeals for the Second Circuit, which is still pending. *See*, Court of Appeals Case No. 19-2318. In his Petition for Review, Petitioner asserted the following arguments: The IJ abused his discretion in finding that Petitioner had abandoned his asylum and CAT claims, which violated Petitioner's right to due process; the IJ was biased; the IJ denied Petitioner the opportunity to submit evidence in support of his CAT claim; the IJ and BIA "failed to recognize issues" regarding the timing of the withdrawal by Petitioner's last attorney;[37]  and the IJ failed to make proper findings of fact.

On July 22, 2019, Petitioner filed a reply (ECF No. 8) to Respondent's opposition to his Petition.[38]    Petitioner contends that he is not an arriving alien; on this point, Petitioner maintains that even if he was categorized as an arriving alien in 2007, his status eventually reverted back to LPR.    Alternatively, Petitioner asserts that even if he is correctly categorized as an arriving alien, his prolonged detention under § 1225

_____

[37]  This argument is contradicted by the record, since the BIA expressly discussed the fact that Plaintiff's final attorney had withdrawn five weeks prior to the hearing, which gave Petitioner sufficient time to retain a new attorney.

[38]  The Court accepts the reply (ECF No. 8) as timely filed.    Petitioner's prior request for additional time to submit a reply (ECF No. 7) is denied as moot.

without an individualized bond hearing violates due process.   Petitioner further

indicates that even if he is an arriving alien who is subject to mandatory detention under

8 U.S.C. § 1225(b)(2)(A), mandatory detention under that statute does not mean

indefinite detention, and that even if an IJ lacks authority to conduct a bond hearing this

Court can conduct such a hearing in connection with a habeas petition.   Petitioner also

contends that he has not intentionally delayed his removal proceedings.

On September 17, 2019, the Honorable Michael A. Telesca, Senior District

Judge, denied Petitioner's first habeas petition. *See*, 2019 WL 4451484 (W.D.N.Y. Sep.

17, 2019).   In that petition, Petitioner had argued that his continued detention was

illegal because he had derivative citizenship through his mother, pursuant to INA § 321,

and, alternatively, that insofar as that statute did not grant him derivative citizenship it

was unconstitutional as applied because it violated the Equal Protection Clause.

Petitioner had further argued that the IJ had violated his rights to due process at a

hearing held on April 13, 2018.   However, Judge Telesca granted the Government's

motion to dismiss for lack of jurisdiction pursuant to 8 U.S.C. § 1503(a)(2), and

dismissed the petition without prejudice.   Further, Judge Telesca found that Petitioner

had not exhausted his administrative remedies with regard to the citizenship claim in

any event.

On October 21, 2019, in connection with Petitioner's appeal pending before the

Second Circuit, the Circuit Court granted Petitioner's application for a temporary stay of

removal, pending review of the final administrative removal order by a three-judge

panel. *See*, Court of Appeals Docket No. 60.   Consequently, at the moment Petitioner is not in danger of being removed to Honduras.

The Court has considered the record and the parties' submissions

## DISCUSSION

Petitioner has filed the subject petition pursuant to 28 U.S.C. § 2241, proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).   "[F]ederal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241." *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998).   As mentioned earlier, Petitioner maintains that his detention since February 2017, while his removal proceedings have continued, and without a bond hearing, violates his rights to substantive due process and procedural due process under the Fifth Amendment to the U.S. Constitution.   In this regard, it is undisputed that Petitioner has not had any type of bond hearing or reconsideration of his detention status since being taken into custody in February 2017.   Nevertheless, for the reasons discussed below the Court finds that Petitioner's due process claims lacks merit.

<u>Petitioner's Request for a Stay of Removal</u>
<u>is Denied For Lack of Jurisdiction</u>

Petitioner's first claim contends that the Court should issue an order staying his removal, since "he will not be able to be removed to Honduras in the reasonably

foreseeable future."   Petitioner's contention that he is unlikely to be removed is unsupported and directly contrary to what he told the Second Circuit when he applied for a stay of removal in that Court.[39]   Indeed, the record indicates that there is nothing preventing Petitioner's removal to Honduras at this moment, except his appeal that is pending before the Second Circuit challenging the final order of removal.   In that regard, Petitioner's request for a stay order from this Court is now moot, since the Second Circuit has already stayed Petitioner's removal pending that Court's determination of his appeal.   However, this Court lacks jurisdiction to grant a stay of removal in any event. *See, Al-Garidi v. Holder*, No. 09-CV-6160L, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009)   ("This Court and other district courts throughout the country have routinely held that because district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal.").   Consequently, Petitioner's request for a stay of removal is denied.

<u>Petitioner is Detained as an Arriving Alien Under 8 U.S.C. § 1225(b)</u>

Petitioner indicates that he is unsure whether he is detained pursuant to §

---

[39] On July 26, 2019, Petitioner filed an "Emergency Stay of Removal" motion with the Second Circuit, in which he stated that a stay was urgently needed because on July 16, 2019, the BIA had affirmed his removal order, and it was therefore likely that he could be deported within the next ten days. See, Emergency Stay of Removal Motion, Case No. 19-2318, Circuit Court Docket No. 3 at pp. 2-3 ("The BIA affirmed the decision of the Immigration Judge on July 16, 2019, and is the basis for Petitioner seeking a STAY before this Court. ...   Because of Petitioner's detention at BFDF, and his experience here, he prays that this STAYbe granted on an EMERGENCY basis, as the OHS/ICE at BFDF, have removed others in less than 10 days of a BIA decision.").

1225(b) or 1226, but maintains that in either event he is entitled to habeas relief.    At

the outset, the Court finds that Petitioner is detained pursuant to § 1225(b), and not §

1226, since he was detained as an inadmissible arriving alien. *See, e.g., Singh v. Barr*,

No. 19-CV-1208, 2019 WL 6609312, at *2 (W.D.N.Y. Dec. 3, 2019) ("Under section

1225, 'an alien who 'arrives in the United States,' or 'is present' in this country but 'has

not been admitted,' is treated as 'an applicant for admission.' *Jennings v. Rodriguez*,

138 S. Ct. 830, 836 (2018) (quoting section 1225(a)(1)).   . . .   On the other hand,

"[s]ection 1226 generally governs the process of arresting and detaining [aliens present

in the country] pending their removal." *Jennings*, 138 S. Ct. at 837 (first alteration in

original) (citation omitted).").

As discussed above, although Petitioner had previously resided in the United

States as an LPR for decades, he was never re-admitted following his arrival in Miami

from Honduras in 2007.    Rather, he was paroled into the United States pending the

completion of the inspection and a determination of his "immigration status and final

admissibility."[40]    As respondent points out,[41]  such parole is not admission. *See*, 8

U.S.C. § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an

_____

[40] ECF No. 4-1 at p. 33.    On a case-by-case basis, immigration officials may parole potentially
inadmissible arriving aliens into the United States, when immediate detention would not be in the public
interest. *See*, 8 C.F.R. § 212.5(b)(5).

[41] ECF No. 5 at p. 7 ("Arriving aliens may be paroled into the country pending their application to be
admitted. 8 C.F.R. § 212.5(a), (b)(5). Parole under § 212.5, however, "shall not be regarded as an admission
of the alien." 8 U.S.C. § 1182(d)(5)(A).").

admission[.]").   Moreover, the inspection was never completed, and no determination

regarding "final admissibility" was ever made, since Petitioner failed to appear at the

DHS office at JFK.   Consequently, the Court finds that for immigration purposes,

Petitioner presently has the status of an arriving alien who was paroled into the country,

and not that of an LPR.

In his Petition in this action, Petitioner did not dispute that he is properly

classified as an arriving alien.   In his Reply, however, Petitioner raises a new

argument, suggesting that he should not be considered an arriving alien.   Specifically,

the Reply states that, although in 2007 Petitioner was classified as an arriving alien and

paroled into the United States pending completion of the investigation into his

admissibility, the parole eventually ended, at which time his status reverted to that of an

LPR.[42]   According to the Reply, this reversion to LPR status occurred by operation of 8

C.F.R § 212.5(E)(2)(i), which states in pertinent part

> (e) Termination of parole— (2)(i) On notice. In cases not covered by
> paragraph (e)(1) of this section, upon accomplishment of the purpose for
> which parole was authorized or when in the opinion of one of the officials
> listed in paragraph (a) of this section, neither humanitarian reasons nor
> public benefit warrants the continued presence of the alien in the United
> States, parole shall be terminated upon written notice to the alien *and he
> or she shall be restored to the status that he or she had at the time of
> parole.* When a charging document is served on the alien, the charging
> document will constitute written notice of termination of parole, unless
> otherwise specified. Any further inspection or hearing shall be conducted
> under section 235 or 240 of the Act and this chapter, or any order of

---

[42] ECF No. 8 at p. 8.

exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5 (Westlaw 2020) (emphasis added).   Petitioner cites no case authority in support of this argument, nor has the Court found any.

In any event, the argument is neither persuasive nor properly presented in this action.   The argument is not properly presented inasmuch as it was raised for the first time in a reply brief.   Apart from that, the argument lacks merit based on a plain reading of the regulation, which states that upon termination of parole, the alien's status "shall be restored to the status that he or she had at the time of parole."   Petitioner's status at the time parole was granted in 2007 was not that of an LPR.   Rather, as discussed earlier, his status was that of an arriving alien, since his admissibility had not yet been determined. See, 8 U.S.C. § 1101(a)(13)(A); *see also, United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019) ("Parole does not change parolees' immigration status: they remain 'at the border' for the purposes of immigration law and are treated as applicants for admission into the country.").   Indeed, Petitioner was never re-admitted into the United States following his trip to Honduras in 2007.   Consequently, Petitioner's argument on this point lacks merit, and the Court will proceed on the basis that Petitioner has the immigration status of an arriving alien and is, therefore, detained under 8 U.S.C. § 1225(b).

24

<u>Petitioner Is Subject to Mandatory Detention Under the Relevant Statutes</u>

Respondent maintains that Petitioner's continued detention is required by statute, since he is an arriving alien who is inadmissible due to his criminal convictions, and who must therefore be detained pending the completion of removal proceedings.   More specifically, Respondent contends that Petitioner is an "arriving alien" pursuant to 8 U.S.C. § 1101(a)(13)(C)(vi), and that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).   Section 1101(a)(13)(C)(vi) states, in pertinent part, that,

> (a) As used in this chapter-- (C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws *unless the alien*-- (vi) is attempting to enter at a time or place other than as designated by immigration officers *or has not been admitted to the United States after inspection and authorization by an immigration officer.*

8 U.S.C.A. § 1101(a)(13)(C)(vi) (Westlaw 2020) (emphasis added).   In maintaining that Petitioner is now an "arriving alien," despite his former status as an LPR prior to leaving the United States and traveling to Honduras, Respondent states, as mentioned earlier, that "[a]rriving aliens remain legally outside the United States until inspected and admitted. *See* 8 U.S.C. § 1101(a)(13)(A)."[43]

Having demonstrated that Petitioner has the status of an arriving alien, Respondent further maintains that Petitioner is inadmissible, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i), since he was convicted of a crime of moral turpitude.   Respondent

---

[43] ECF No. 5 at p. 14.

contends, therefore, that Petitioner is properly detained pursuant to 8 U.S.C. §

1225(b)(2)(A), which states, in pertinent part, that "in the case of an alien who is an

applicant for admission, if the examining immigration officer determines that an alien

seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien

*shall be detained* for a [removal] proceeding under section 1229a [INA § 240] of this

title." (emphasis added).

Petitioner does not dispute that inadmissible aliens in removal proceedings are

statutorily subject to mandatory detention, though he disputes the constitutionality of his

continued detention under that statutory scheme.    Nevertheless, it is undisputed that

insofar as Petitioner is an arriving alien, he is *statutorily* subject to mandatory detention

pending the completion of his removal proceedings. *See, e.g., United States v. Balde*,

943 F.3d at 84 ("[A]n alien seeking admission, like Balde, 'shall be detained' pending a

removal proceeding 'if the examining immigration officer determines that [he] is not

clearly and beyond a doubt entitled to be admitted.' 8 U.S.C. § 1225(b)(2)(A).").[44]

In sum, under § 1225(b) Petitioner is not entitled to periodic bond hearings. *See,*

*Jennings v. Rodriguez*, 138 S. Ct. 830, 851, 200 L. Ed. 2d 122 (2018) ("[T]he Court of

Appeals erroneously concluded that periodic bond hearings are required under the

immigration provisions at issue here[.]").    However, that is not determinative of

---

[44]  The only exception to such mandatory detention is that DHS may grant discretionary parole, *see*, 8
U.S.C. § 1182(d)(5)(A). Petitioner has not requested such relief.

Petitioner's constitutional claims. *Id.*

> Although Petitioner is Categorized as an Arriving Alien for Immigration Purposes, He Has Some Due Process Rights as a Returning Resident Alien For Constitutional Purposes

Respondent maintains that since Petitioner is classified as an arriving alien, his due process claims necessarily fail, since the only process due to him is that which Congress has provided.   For support, Respondent cites cases such as *Mezei*, *Guzman*, and *Poonjani*, disussed earlier.   Respondent's argument on this point is correct insofar as it pertains to arriving aliens generally. *See, Guzman v. Tippy*, 130 F.3d 64, 66 (2d Cir. 1997) ("An excluded alien's rights are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment. As an excluded alien, Guzman 'stands on a different footing' and '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'") (quoting *Mezei*);[45]  *see also, Mendez Ramirez v. Decker*, No. 1:19-CV-11012-GHW, 2020 WL 1674011, at *14 (S.D.N.Y. Apr. 3, 2020) ("*Mendez Ramirez*") ("The issue is not whether Mr. Mendez Ramirez [(an arriving alien)] has a right to due process, "but rather the scope of the constitutional protections available to him—and on that question, *Mezei* is controlling.") (quoting *Poonjani*).

---

[45]  *See also, Guzman v. Tippy*, 130 F.3d at 65 ("[W]e conclude that there is statutory authority for the indefinite detention of excludable aliens and that such indefinite detention is not unconstitutional."); *id.* at 66 (Describing "the Supreme Court's ruling in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953)" as "controlling.").

However, Respondent fails to discuss the potential impact of Petitioner's status as a returning LPR/resident alien on his constitutional claims.    On this point, it does not appear to be true, as Respondent assumes, that Petitioner, who previously resided in the United States as an LPR, is treated as an arriving alien for constitutional purposes, simply because he is classified as such for immigration purposes.    Rather, the Supreme Court and Second Circuit have indicated that returning resident aliens have at least some due process rights in gaining entrance to the country:

> Other than protection against gross physical abuse, the alien seeking initial entry appears to have little or no constitutional due process protection. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212–16, 73 S.Ct. 625, 629–31, 97 L.Ed. 956 (1953); Landon, 459 U.S. at 32, 103 S.Ct. at 329; *Lynch v. Cannatella, Jr.*, 810 F.2d 1363, 1374 (5th Cir.1987). Rights in such circumstances appear to be largely statutorily derived, *see Jean v. Nelson*, 727 F.2d 957, 968 (11th Cir.1984), aff'd, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); 2 Gordon & Mailman, supra, §§ 3.18–3.19, <u>although some constitutional due process protection may be available to the resident alien seeking re-entry depending on the length of her absence</u>. *See Landon [v. Plasencia]*, 459 U.S. [21,] 33–34 [(1982)], 103 S.Ct. at 329–30 (citing *Shaughnessy*); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–600, 73 S.Ct. 472, 477–79, 97 L.Ed. 576 (1953).

*Correa v. Thornburgh*, 901 F.2d 1166, 1171, n. (2d Cir. 1990) (emphasis added).    In this regard the Second Circuit's *Correa* decision was referring to the Supreme Court's opinion in *Landon v. Plasencia*, which stated in pertinent part:

> This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a

28

sovereign prerogative. *See, e.g., United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950); *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-660, 12 S.Ct. 336, 338, 35 L.Ed. 1146 (1892). Our recent decisions confirm that view. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977); *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). As we explained in *Johnson v. Eisentrager*, 339 U.S. 763, 770, 70 S.Ct. 936, 939, 94 L.Ed. 1255 (1950), however, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly. Our cases have frequently suggested that a continuously present resident alien is entitled to a fair hearing when threatened with deportation, *see, e.g., United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133, 134, 44 S.Ct. 260, 261, 68 L.Ed. 590 (1924); *Low Wah Suey v. Backus*, 225 U.S. 460, 468, 32 S.Ct. 734, 735, 56 L.Ed. 1165 (1912) (hearing may be conclusive "when fairly conducted"); *see also Kwong Hai Chew*, 344 U.S., at 598 n. 8, 73 S.Ct., at 478 n. 8, and, although we have only rarely held that the procedures provided by the executive were inadequate, we developed the rule that a continuously present permanent resident alien has a right to due process in such a situation. *See, e.g., United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560 (1927); *The Japanese Immigrant Case*, 189 U.S. 86, 100-101, 23 S.Ct. 611, 614, 47 L.Ed. 721 (1903); *see also Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50, 70 S.Ct. 445, 453-54, 94 L.Ed. 616 (1950); *Bridges v. Wixon*, 326 U.S. 135, 153-154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945).

The question of the procedures due a returning resident alien arose in *Kwong Hai Chew v. Colding, supra*. There, the regulations permitted the exclusion of an arriving alien without a hearing. We interpreted those regulations not to apply to Chew, a permanent resident alien who was returning from a five-month voyage abroad as a crewman on an American merchant ship. We reasoned that, "For purposes of his constitutional right to due process, we assimilate petitioner's status to that of an alien continuously residing and physically present in the United States." 344 U.S., at 596, 73 S.Ct., at 477. Then, to avoid constitutional problems, we

29

construed the regulation as inapplicable. Although the holding was one of regulatory interpretation, the rationale was one of constitutional law. Any doubts that *Chew* recognized constitutional rights in the resident alien returning from a brief trip abroad were dispelled by *Rosenberg v. Fleuti, supra*, where we described *Chew* as holding "that the returning resident alien is entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him." 374 U.S., at 460, 83 S.Ct., at 1811.

If the permanent resident alien's absence is extended, of course, he may lose his entitlement to "assimilat(ion of his) status," *Kwong Hai Chew v. Colding*, *supra*, 344 U.S., at 596, 73 S.Ct., at 477, to that of an alien continuously residing and physically present in the United States. In *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), this Court rejected the argument of an alien who had left the country for some twenty months that he was entitled to due process in assessing his right to admission on his return. We did not suggest that no returning resident alien has a right to due process, for we explicitly reaffirmed *Chew*. We need not now decide the scope of *Mezei*; it does not govern this case, for Plasencia was absent from the country only a few days, and the United States has conceded that she has a right to due process.

*Landon v. Plasencia*, 459 U.S. 21, 32–34, 103 S. Ct. 321, 329–30, 74 L. Ed. 2d 21 (1982) (citation to record omitted).

Consequently, Respondent's assertion that *Mezei* is dispositve of Petitioner's due process claims is unpersuasive, since returning LPRs have some due process rights beyond those held by an arriving alien seeking initial admission.   Similarly, cases such as *Poonjani* and *Mendez Ramirez* are distinguishable, since they involved arriving aliens who were not also returning LPRs.

However, a returning LPR is not necessarily entitled to the same level of due

process as an LPR who never left the United States. *See, Landon v. Plasencia*, 459

U.S. at 31, 103 S. Ct. at 328 ("The reasoning of *Chew* was only that a resident alien

returning from a brief trip has *a right to due process* just as would a continuously

present resident alien. It does not create a right to identical treatment for these two

differently situated groups of aliens.") (emphasis added); *accord, Jobe v. Whitaker*, 758

F. App'x 144, 147 (2d Cir. 2018) ("Supreme Court precedent establishes that LPRs who

leave and return to the United States, such as Jobe, are differently situated from LPRs

who continuously remain in the United States with respect to those groups' due process

rights.") (citing *Plasencia*).   For example, in *Plasencia* the Supreme Court indicated

that LPRs who had never left the country would be entitled to removal proceedings with

particular procedural safeguards, while a returning LPR could have her admission to the

country denied at an exclusion hearing in which she would have fewer procedural

safeguards. *Id.* (Expressly rejecting the circuit court's determination that a "resident

alien returning from a brief trip 'could not be excluded without the procedural due

process to which he would have been entitled had he never left the country.'").   In this

regard, it is notable that the returning LPR in *Plasencia* had only been outside of the

Country for two days before returning. *Id.*, 103 S.Ct. at 324.   Therefore, while an LPR

who remains outside of the United States for a long period may lose his liberty interest

altogether, *see, Mezei*, it does not hold true that an LPR who is gone for only a brief

period retains the same liberty interest as if he had never left.

     In this action, the record does not indicate how long Petitioner was outside of the

U.S. before returning on September 4, 2007.   However, Respondent does not argue that Petitioner lost his due process rights as a returning resident alien by remaining out of the United States for an extended period.[46]   Consequently, the Court assumes that Petitioner was only outside of the Country for a relatively brief period, and that he retained some due process rights as a returning resident alien.

As for the amount of process that was due to the returning resident alien in *Plasencia* at her exclusion hearing, the Supreme Court declined to provide specifics. *See, Landon v. Plasencia*, 459 U.S. at 32, 103 S. Ct. at 329 ("We agree with Plasencia that under the circumstances of this case, she can invoke the Due Process Clause on returning to this country, although we do not decide the contours of the process that is due[.]").   Instead, the Court stated:

> The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.   In evaluating the procedures in any case, the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures. *Mathews v. Eldridge*, 424 U.S. 319, 334-335, 96 S.Ct. 893, 902-903, 47 L.Ed.2d 18 (1976).

*Landon v. Plasencia*, 459 U.S. at 34, 103 S. Ct. at 330 (other citations omitted); *see also*, *Yiu Sing Chun v. Sava*, 708 F.2d 869, 877 (2d Cir. 1983) ("Use of th[e] *Mathews v.*

---

[46] As already mentioned, Respondent does not concede that Petitioner had any due process rights to lose.

*Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-903, 47 L.Ed.2d 18 (1976), analysis

in the immigration context has been suggested by the Supreme Court in *Landon v.*

*Plasencia*, 459 U.S. 21, ---- - ----, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982), to be sure,

however, in the case of a returning resident alien.").

        <u>Petitioner's Substantive Due Process Claim Lacks Merit</u>

        Petitioner concedes that the Government has a legitimate interest in detaining

him for the period necessary to effectuate his removal.[47]   Petitioner maintains, though,

that such interest does not justify "indefinite detention,"[48] and that his detention since

February 2017 violates his substantive due process rights, since he "has already been

detained in excess of six months and his removal is not significantly likely to occur in the

reasonably foreseeable future."[49]  The Court disagrees.

        "[D]etention during deportation proceedings [i]s a constitutionally valid aspect of

the deportation process." *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 1717,

155 L. Ed. 2d 724 (2003) ("*Demore*").   The Supreme Court has long held that "the

Government may constitutionally detain deportable aliens during the limited period

necessary for their removal proceedings." *Id.*   This includes detention of LPRs. *See,*

*id.*, 538 U.S. at 513, 123 S. Ct. at 1712 (The alien, Kim, was a lawful permanent

resident).   In *Demore*, the Supreme Court noted that, in many cases, detention

---

[47] Petition, ECF No. 1 at ¶ ¶   33-34.

[48] Petition, ECF No. 1 at ¶ ¶   33-34.

[49] Petition, ECF No. 1 at ¶ 34.

pending removal lasts only a few months.   However, the Court indicated that longer

detention may occur, and is still acceptable, where the alien requests continuances of

removal proceedings. *See, id.*, 538 U.S. at 530–31, 123 S. Ct. at 1721 ("[R]espondent

was detained for somewhat longer than the average—spending six months in INS

custody prior to the District Court's order granting habeas relief, but respondent himself

had requested a continuance of his removal hearing.") (footnote omitted).

A substantive due process violation may occur where an alien who has been

detained pending removal can establish that his removal is not reasonably foreseeable.

*See, Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (Observing that in *Zadvydas*,

"[i]n order to save § 241 from unconstitutionality, the Supreme Court held that "once

removal is no longer reasonably foreseeable, continued detention is no longer

authorized by statute.   . . .   Under *Zadvydas*, then, detention of an alien 'once removal

is no longer reasonably foreseeable' not only violates § 241, it also violates the Due

Process Clause.").   However, there is no due process violation where removal remains

reasonably foreseeable. *See, id.* ("Wang's due process rights are not jeopardized by his

continued detention as long as his removal remains reasonably foreseeable.").

In the instant case, Petitioner has not made any showing that his removal is

unlikely to occur in the near future.   To the contrary, he made the opposite showing to

the Second Circuit when he applied for a stay of removal.   Additionally, Petitioner's

detention is not indefinite or potentially permanent; rather it will end once his removal

proceedings are complete, which will occur as soon as the Second Circuit rules on his

appeal.   Although Petitioner's removal proceedings have been dragging on for three years now, due to his appeals and repeated requests for adjournments, this delay does not result in a substantive due process violation. *See, e.g., Beqir v. Clark*, 220 F. App'x 469, 471 (9th Cir. 2007) ("Krasniqi has made no showing that his removal is not practically attainable. While his detention has been lengthy, its length is attributable to the administrative and judicial processes.   Moreover, his detention has a definite termination point. Upon completion of judicial review of his petition, our stay of the removal order will be lifted. Thus, Krasniqi's detention meets substantive due process requirements."); *see also, Perez v. Aviles*, 188 F. Supp. 3d 328, 332–33 (S.D.N.Y. 2016) ("Perez's detention has not been arbitrary or unreasonable. While Perez's detention has been lengthy, there is no indication of an 'unreasonable delay' by DHS in pursuing or completing Perez's removal.   Rather, the length of Perez's detention has largely been due to his own appeals. Although Perez has acted within his rights in challenging his removal orders, he may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process.") (citations omitted).

<u>Petitioner's Procedural Due Process Claim Lacks Merit</u>

The remaining question is whether Petitioner's detention, since February 2017, without a bond hearing, violates his procedural due process rights.   Recently, another judge of this District provided a comprehensive description of the current state of the law in this Circuit concerning as-applied procedural due process challenges under 8

35

U.S.C. § § 1225(b) & 1226(c) following the Supreme Court's ruling in *Jennings*:

> [Prior to the Supreme Court's decision in *Jennings*,] the Ninth Circuit required bond hearings to be held for aliens detained pursuant to 8 U.S.C. § 1226(c) and 8 U.S.C. § 1225(b), as a matter of statutory interpretation. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013). Moreover, the Second Circuit had adopted the Ninth Circuit's approach— at least as it pertained to aliens detained pursuant to § 1226(c)—and imposed a bright-line rule that those alien detainees be afforded a bond hearing after six months of immigration detention. *See Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("[I]n order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."), *cert. granted, judgment vacated*, ⸺ U.S. ⸺, 138 S. Ct. 1260, 200 L.Ed.2d 415 (2018).
>
> \*\*\*
>
> *Jennings* held that § 1225(b) does not contain an implicit six-month time limit at which point a bond hearing must be held, thus eliminating the statutory six-month bright-line rule formulated in *Rodriguez* and adopted by *Lora*. 138 S. Ct. at 844. As a result, the Supreme Court subsequently granted certiorari in *Lora*, vacated the judgment, and remanded the case for "further consideration" in light of its decision in *Jennings. Shanahan v. Lora*, ⸺ U.S. ⸺, 138 S. Ct. 1260, 200 L.Ed.2d 415 (2018). On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

> The Second Circuit has not addressed, post-*Jennings* and post-*Lora*, the standard to be utilized by courts in addressing procedural due process claims for aliens detained in the immigrant habeas context. However, the overwhelming majority of district courts within the Circuit to have addressed the issue in the context of 8 U.S.C. § 1226(c)—pertaining to the detention of criminal aliens—have adopted a case-by-case approach where "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore v.*

*Kim*, 538 U.S. 510, 532, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). The case-by-case approach is an "as-applied, fact-based analysis ... derived from the Supreme Court's decisions in [*Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)] and *Demore*." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018); *see Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (noting that the *Sajous* framework has been "overwhelmingly adopted" in the Southern District of New York (quotation omitted)); *Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018) (same); *c.f. Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018) (utilizing both a multi-factor test and the traditional procedural due process analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), enforcement granted *sub nom. Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *10 n.7 (S.D.N.Y. Nov. 21, 2018) (concluding that "[t]he *Mathews* test is consistent with the approach of ... considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this Circuit seem to have adopted the fact-based inquiry approach), appeal withdrawn, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified in the § 1226(c) context can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral*, 331 F. Supp. 3d at 261. These factors require consideration of multiple variables in determining whether a detainee has been held for an unreasonably lengthy period of time. While "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months," *Sajous*, 2018 WL 2357266, at *10, "the sheer length of the proceedings is not alone determinative of reasonableness," *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) (quoting *Young v. Aviles*, No. 15-CV-4545 (JMF), 2015 WL 4579204, at *1 (S.D.N.Y. July 29, 2015)), appeal withdrawn, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019). For example, while "'aliens should not be punished for pursuing avenues of relief and appeals[,]' ... evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (first alteration in original) (quoting *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

Some district courts in this Circuit have also applied the multi-factor test to aliens detained pursuant to § 1225(b) and concluded that due process requires an individualized bond hearing. *See, e.g., Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (applying factors set forth in *Sajous* to conclude that the petitioner's detention for nearly 10 months pursuant to § 1225(b) without a bond hearing was unreasonable and unconstitutional as applied to him), appeal filed, Case No. 18-3714 (2d Cir. Dec. 11, 2018); *Perez*, 2018 WL 3991497, at *4-5 (applying factors set forth in *Sajous* to conclude that the petitioner's detention for nearly a year pursuant to § 1225(b) without a bond hearing was unreasonable and unconstitutional as applied to him); *see also Wang v. Brophy*, Case # 17-CV-6263-FPG, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019) (holding that detention pursuant to § 1225(b) for two years without a bond hearing was unreasonable and unconstitutional as applied to petitioner), *appeal dismissed*, 2019 WL 4199901 (2d Cir. Aug. 1, 2019); *Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (holding that detention pursuant to § 1225(b) for 34 months without a bond hearing violated the petitioner's due process rights). However, some district courts have concluded that due process

> does not require a bond hearing for aliens detained pursuant to § 1225(b)
> and the procedure for discretionary parole pursuant to 8 U.S.C. §
> 1182(d)(5)(A) is sufficient to satisfy any due process concerns. *See
> Alexandre v. Decker*, No. 17 Civ. 5706 (GBD) (KHP), 2019 WL 1407353,
> at *5 (S.D.N.Y. Mar. 28, 2019) (parole process pursuant to 8 U.S.C. §
> 1182(d)(5)(A) satisfied due process for alien detained pursuant to §
> 1225(b)); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648-49 (S.D.N.Y.
> 2018) (holding that due process did not afford [arriving] alien detained
> pursuant to § 1225(b) a bond hearing; rather due process "is whatever
> procedure has been 'authorized by Congress' " which in the case of the
> petitioner was parole at the discretion of the Attorney General). At least
> one court in this district has concluded that while due process does not
> require an individualized bond hearing for an alien detained pursuant to §
> 1225(b), the petitioner was entitled to "a rigorous custody review" that
> mandated more than parole review in the discretion of the Attorney
> General. *Clerveaux v. Searls*, No. 18-CV-1131, 2019 WL 3457105, at *15-
> 17 (W.D.N.Y. July 31, 2019).

*Abdi v. McAleenan*, 405 F. Supp. 3d 467, 475–77 (W.D.N.Y. 2019) (Wolford, J.).

As the foregoing discussion indicates, the question now before this Court is

whether, in light of the factors set forth above, Petitioner's continued detention under §

1225(b) without a bond hearing has become "unreasonable or unjustified," such that it

violates his right to procedural due process.    The analysis must start, however, with the

recognition that *in general* the detention of criminal aliens like Petitioner, without a bond

hearing, for the entire period of their removal proceedings does *not* violate due process.

*See, Demore*, 538 U.S. at 531, 123 S.Ct. at 1721-1722 ("Detention during removal

proceedings is a constitutionally permissible part of that process.").

As it has been interpreted, *Demore* merely leaves the door open to as-applied

challenges to continued detention where the detention has truly become unreasonable or unjustified.[50]   It may be true that some "judges in this district have routinely held that . . .   prolonged mandatory detention [of criminal aliens] pending removal proceedings, without a bond hearing, 'will – at some point – violate the right to due process.'" *Yusuf v. Edwards*, No. 18CV3605GBDBCM, 2019 WL 4198798, at *7 (S.D.N.Y. July 2, 2019) (collecting cases).   However, this Court does not agree with the idea that such mandatory detention will *inevitably* become unreasonable or unjustified after a certain amount of time, [51]  since it is contrary to *Demore*.[52]   Provided that removal proceedings

---

[50]  *See, e.g., Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at *6 (S.D. Ga. Jan. 29, 2020) ("In *Demore*, the United States Supreme Court held that § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings. However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified. *Id.* at 531–33 (Kennedy, J., concurring)"), report and recommendation adopted, No. 5:19-CV-51, 2020 WL 1046796 (S.D. Ga. Mar. 3, 2020).

[51]  The notion that such detention will violate due process "at some point" is a reference to the passage of time, primarily.

[52]  Although the Supreme Court in *Demore* discussed the average length of time that removal proceedings were then taking in the year 2003, it did not suggest that removal proceedings taking longer than that would result in due process violations.   It is a mistake, in the Court's view, to use that discussion as a yardstick for determining a due process violation. *See, e.g., Yusuf v. Edwards*, No. 18CV3605GBDBCM, 2019 WL 4198798, at *8 (S.D.N.Y. July 2, 2019) ("The first and "most important" *Sajous* factor, 2018 WL 2357266, at *10, weighs heavily in favor of granting the petition here. Yusuf has now been continuously detained for almost sixteen months – well beyond the "brief period" (averaging "about five months" when the alien "chooses to appeal") deemed reasonable in *Demore*, 538 U.S. at 530, and longer than in most of the post-*Jennings* cases cited above.").   The point of that discussion in *Demore* was not to set a particular outer limit for such detention, but to emphasize that detention pending removal proceedings, unlike the

are progressing toward completion, even if slowly, continued mandatory detention without a bond hearing does not violate due process unless the detention, beyond the mere fact of the delay, has become unreasonable or unjustified on the Government's part.[53]

Under the particular facts and circumstances of this action, the Court finds that Petitioner's continued detention without a hearing does not violate his procedural due process rights.   According to *Demore*, Petitioner's detention is generally unobjectionable from a due process standpoint, and nothing about the particulars of his case make such detention unreasonable or unjustified.[54]   Assuming *arguendo* that the so-called *Sajous* factors are the appropriate ones to apply here, the only factor which weighs in Petitioner's favor is the length of time that he has been detained pending removal proceedings – three years.[55]   However, to the extent that the removal proceedings have been "delayed," Petitioner is the party primarily, if not entirely, responsible for any such delay.   In this regard, Petitioner made multiple requests for change of venue, many requests for adjournments to obtain counsel, and many

---

detention found to be unconstitutional in *Zadydas*, has a "definite termination point" and is therefore neither "indefinite" nor "potentially permanent." *Demore*, 538 U.S. at 529, 123 S. Ct. at 1720.

[53]Volume-related litigation delays are a regrettable fact of life, and do not entitle an otherwise detainable criminal alien to gain release pending removal proceedings.

[54]As a continuously-present resident alien, the respondent in *Demore* was arguably entitled to even more due process than Petitioner.

[55] This does not exceed the period of incarceration that Petitioner served for the crimes for which the IJ found him to be inadmissible, which was at least seven years.

requests for adjournments to allow him to prepare his defense.   In spite of that, and despite the fact that Petitioner had years to prepare his asylum and CAT claims, when the IJ informed Petitioner on 13, 2018, that it was his last opportunity to present those claims, Petitioner declined to make any showing in support of a CAT or asylum claim. Indeed, even now the record fails to offer any clue as to the basis for Petitioner's alleged asylum or CAT claims.   Apart from those defenses, Petitioner's other defense to his removal was that he had derivative citizenship, but that claim was denied since he did not meet the statutory requirements. Petitioner had argued that the derivative citizenship statute was unconstitutional, but that issue, too, has been decided against him, and his argument on that point is not included in his pending appeal to the Second Circuit.

Continuing with the *Sajous* factors, Respondent has asserted, and Petitioner has not disputed, that Petitioner's conditions of confinement at the Buffalo Federal Detention Facility in Batavia, New York, are significantly better than those at a penal institution in many respects.[56]   Additionally, one of Petitioner's crimes of conviction was quite serious in that it involved sexual abuse of a child.   And finally, Petitioner's detention appears to be very near to its conclusion, since the only obstacle to his removal at this time is his request for review by the Second Circuit, which has been pending since July 2019 and which will, presumably, be addressed soon.

---

[56]  Hobart Affidavit, ECF No. 4-4.

Having considered all of the various facts and circumstances discussed above, the Court finds that Petitioner's procedural due process claim lacks merit since he has not shown that his continued detention as a criminal alien pending his removal proceedings is either unreasonable or unjustified.

CONCLUSION

The habeas petition is denied, and this action is dismissed.   Petitioner's request for additional time to submit a reply (ECF No. 7) is denied as moot.   The Clerk is directed to amend the caption as indicated in the caption of this Decision and Order and in footnote 1, and to close this action.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:      Rochester, New York
            April 23, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

43